```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                     CASE NO. 1:15-TP-20049-KMM-1
 3

 4    UNITED STATES OF AMERICA
                                        Miami, Florida
 5
           vs.                          November 10, 2016
 6                                      Thursday

 7
      GITANO PIERRE BRYANT              Scheduled 2:00 p.m.
 8                                      2:33 p.m. to 3:06 p.m.

 9                                      Pages 1 - 22
      ------------------------------------------------------------
10

11           PROBATION VIOLATION/SENTENCING HEARING

12           BEFORE THE HONORABLE K. MICHAEL MOORE
                UNITED STATES CHIEF DISTRICT JUDGE
13

14    APPEARANCES:

15
      FOR THE GOVERNMENT:        CHRISTOPHER BARRETT BROWNE, ESQ.
16                               United States Attorney's Office
                                 99 N.E. Fourth Street, 6th Floor
17                               Miami, Florida  33132

18
      FOR THE DEFENDANT:         VINCENT DUFFY, ESQ.
19                               Vincent Duffy Law Offices
                                 815 Ponce de Leon Boulevard
20                               Suite 203
                                 Coral Gables, Florida  33134
21

22    STENOGRAPHICALLY
      REPORTED BY:               GLENDA M. POWERS, RPR, CRR, FPR
23                               Official Court Reporter
                                 United States District Court
24                               400 North Miami Avenue, Room 08S33
                                 Miami, Florida  33128
25
```

1               (Call to the order of the Court:)

2          COURTROOM DEPUTY:  United States versus Gitano Pierre

3     Bryant.

4          MR. BROWNE:  Good afternoon, Your Honor.  Christopher

5     Browne on behalf of the United States.

6          THE COURT:  Is anybody here on Fulford versus

7     Miami-Dade Corrections?  It was disposed of early this morning,

8     so just in the event that anybody was here, I didn't want to

9     inconvenience them.  Okay.

10              And for the defense?

11         MR. DUFFY:  Good afternoon, Your Honor.  Vincent Duffy

12    on behalf of Mr. Bryant.

13         THE COURT:  Good afternoon.  Okay.  We're here for

14    violation of supervised release.

15         COURTROOM DEPUTY:  They're bringing him in.

16         MR. BROWNE:  Violation of probation, Your Honor.

17         THE COURT:  Violation of probation.

18         MR. BROWNE:  Yes, sir.

19         THE COURT:  That's right.  Okay.  The defendant is

20    present.  So my understanding is that Mr. Bryant was originally

21    sentenced on May 13th, 2015, before Judge James Jones out of

22    the Western District of Virginia, and it was for a violation of

23    evasion of federal cigarette excise taxes, for which he

24    received two years probation, a $10,000 fine and a $100 special

25    assessment, with other conditions of probation.

1            And then he violated those conditions.

2            I have -- the probation officer provided me with six

3    violations.  One was by failing to refrain from a violation of

4    law on or about May 2015 through June 2016, in the Southern

5    District of Florida, the defendant committed the offense of

6    defraud the United States and by making false or fraudulent

7    records, return, reports, of an inventory;

8            That he was charged in a second violation, similarly,

9    from May 2015 through 2016, for refusing to pay any tax,

10   namely, a Federal Tobacco Excise Tax, which seems strikingly

11   familiar to his earlier offense, his underlying offense;

12           Violation number 3, by failing to refrain from

13   violation of the law, the defendant committed the offense of

14   attempting to evade or defeat the tax, which sounds almost

15   identical;

16           Violation number 4, defendant committed the offense of

17   fraud and false statements, in violation of Title 26, United

18   States Code, Section 7206;

19           Violation number 5, by leaving the judicial district

20   without first securing the permission of the probation officer;

21           And violation number 6, by failing to submit to a

22   search of his property.  He refused to provide passwords.

23           How does he plead to the violations, 1 through 6,

24   guilty or not guilty?

25           MR. DUFFY:  Mr. Bryant's prepared to plead guilty to

1    some of the violations, Judge.

2         THE COURT:  Okay.  What violations is he prepared to

3    plead guilty to?

4         MR. BROWNE:  Your Honor, if I may.  The Government on

5    its own motion will be -- will ask that the violations number 5

6    and 6 be dismissed.  I can go into the reasons for that, if the

7    Court --

8         THE COURT:  I'll accept it.  Violation number 5 and 6

9    will be dismissed.

10        How about violations 1, 2, 3 and 4?

11        MR. DUFFY:  Mr. Bryant's prepared to admit violations,

12   everything to do with the new offense, Judge, Your Honor.

13        THE COURT:  Mr. Bryant, do you plead guilty to

14   violations number 1, 2, 3 and 4?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  The Court will go ahead and adjudicate him

17   guilty of each of those violations, as I've referenced them

18   earlier.

19        The probation office has calculated -- and I don't know

20   if they did this on the basis of all the violations or just the

21   first four, but a criminal history category I with a guideline

22   range of 4 to 10 months and a period of supervised release of

23   two to three years.

24        Is that a correct calculation of the guidelines?

25        MR. BROWNE:  Of the advisory guidelines, yes, it is,

1    Your Honor, based on the most serious of the violations, which

2    are, in fact, violations 1 through 4.  They are grade B

3    violations.

4              THE COURT:  Okay.  Does the defendant agree?

5              MR. DUFFY:  The defense agrees, Judge.

6              THE COURT:  Mr. Bryant, do you want to say anything on

7    your own behalf before sentence is imposed?

8              MR. DUFFY:  No?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Anything on his behalf?

11             MR. DUFFY:  Yes, Your Honor, the defense would like to

12   be heard.

13             THE COURT:  Go ahead.

14             MR. DUFFY:  Your Honor, I would like to begin by

15   stating something in response to what I heard Your Honor say.

16   The offense that Mr. Bryant is admitting to violate his

17   probation for is a version of tax evasion, Your Honor, tobacco

18   tax evasion.  It is not the same character or the same event.

19             Mr. Bryant pled out in Virginia, Judge, to a very

20   simple illegal act.  He imported some cigarettes and then,

21   quote/unquote, broke the bond, put those cigarettes into U.S.

22   distribution and U.S. commerce and told the Government that he

23   actually sent the cigarettes to Dubai.  So it was a straight

24   breaking-the-bond case, Judge.  This case is wholly different.

25             Mr. Bryant's experienced the direct benefit from

1    breaking-the-bond in the Virginia case, Judge.

2         But what he did in this case, Judge, is completely

3    different.  Mr. Bryant would create artificially low domestic

4    sales prices, Judge, and just -- if I could have a minute just

5    to explain the moving parts.

6         THE COURT:  Sure.

7         MR. DUFFY:  Mr. Bryant would import cigarettes --

8    cigars, in this case -- from the Dominican Republic.  He would

9    pay different prices, but roughly seven or eight cents a cigar,

10   Judge.

11        And then Mr. Bryant would already have pre-arranged a

12   person to sell it to domestically, and he would add on a penny

13   or two profit from whatever he paid the supplier in the

14   Dominican Republic.

15        Now, what Mr. Bryant did, what he's admitting to do

16   today, what he did -- that he shouldn't have done it -- was he

17   then created an invoice that showed that the domestic sales

18   price, instead of being eight or nine cents was, roughly, you

19   know, two or three cents.  So he was creating an artificially

20   low domestic sales price, but not to benefit Mr. Bryant.

21        This money did not go in Mr. Bryant's pocket, Your

22   Honor; because he already had a buyer lined up, that he would

23   hand the invoice to the buyer, the buyer would pay the eight or

24   nine cents a cigar, he would make his penny or two profit.  But

25   then the buyer would pre-pay the 52.75 percent tax based upon

1    the artificially low price.

2           So the person who benefited is not Mr. Bryant.  He did

3    this to stay in the business.  He did this to send his young

4    children to private schools.  He did this to live a lifestyle

5    that he probably could not have lived but for doing what he was

6    doing.  But Mr. Bryant does not have 12 million dollars.

7           Mr. Bryant did not make 12 million dollars.

8           Mr. Bryant allowed his domestic buyer to generate more

9    profit by not getting hit with this heavy tax that everybody

10   else was.  But he didn't make the 12 million and just say to

11   himself, I'm not going to pay the Government.

12          That's not -- and I don't think the Government would

13   push back on me on that.  That's not what happened.  He

14   shouldn't have done what he did, there's no argument about

15   that, Your Honor.  But this is just not a circumstance where

16   he's a thief or he's a predator or he's saying, I'm going to

17   make the money, I'm not paying my taxes.

18          The person who truly benefited was somebody else.

19          Now, he shouldn't have done it, and he did it so that

20   he could be in the business and he could make some money, but

21   it's not -- you know, the numbers get outrageous because this

22   is a big business -- a lot of people smoke cigars -- the

23   numbers are really large numbers.

24          But he didn't get rich doing this.  He didn't.

25          He did it to stay in the business.  So that's my

1   overarching theme of the defense in terms of what sort of

2   sentence Mr. Bryant should receive, is that he's not a

3   predator, he's not a thief.  He's just not.

4          What he did here was he deprived the Government of some

5   tax revenue, at 52.75 percent on cigars.  In essence, what it

6   really boils down to, that he paid four million in taxes, when

7   they think he should have paid 17 million - or whatever the

8   number's going to be - but it's going to be in that range that

9   he was, in essence, paying a third of taxes.

10         He wasn't not paying anything.  He was just paying not

11  enough.  And he wasn't saying, Government, you're not going to

12  get what you deserve and I'm going to keep it in my pocket,

13  that never happened, Your Honor.

14         The second thing I would like to bring up to the Court

15  is that Mr. Bryant cooperated during, basically, the entire

16  pendency of his probation.

17         When Mr. Bryant reached his deal in Virginia -- which

18  was a probationary plea, although not a condition of probation,

19  because the judge up there told me that's not lawful, but

20  cooperation was contemplated.

21         And when Mr. Bryant reached his deal in Virginia for

22  probation, Your Honor, the Government was aware of how he was

23  treating the taxation of large cigars, and they did inform him,

24  you're doing it wrong.

25         And so part of his sentence in Virginia was to go

1     through a civil audit, and so that was -- because they were

2     already aware of what he was doing with the cigars.  And now

3     Mr. Bryant, you know, quite frankly, didn't do the right thing

4     during the civil audit.

5         The Government alleges, and they've shown me some

6     documents, that I believe that he had altered to create that

7     artificially low sales price.  So that's what Mr. Bryant

8     allegedly had done.  That's what he's admitting to do,

9     Your Honor.

10        He's not admitting to taking the 12 million.  He's not

11     admitting to getting rich off of this, because he didn't.  I

12     can put his wife on the stand and she can tell you the

13     financial ruin that the family's in, that the kids are going to

14     get pulled out of the private school and that she may have to

15     move back to her home country just to survive.

16        So, and I have a piece of paper, Your Honor, that the

17     wife brought me today -- I showed Mr. Browne from the

18     Government -- where SunTrust Bank is looking for 50 grand that

19     his company owes 'em.  So he's in debt, the family's in debt,

20     the kids are getting pulled out of the private schools.

21        His wife, like I said, might have to go back to her

22     home country of Brazil to survive.  So Mr. Bryant and family,

23     quite frankly, are going to suffer a real blow for his

24     decisions.  And they were his decisions, Your Honor, and it was

25     his conduct.  We're pleading guilty.

1          You know -- and during Mr. Bryant's cooperation,

2    Your Honor, he was a very good asset for the Government.  I

3    don't have the exact number of cases that he made and that led

4    to convictions.  I can tell the Court in good faith it was

5    multiple, and I believe Mr. Browne might have information to

6    that effect.  But he was a producer for them, Your Honor.

7          And one case, in particular, he tried to produce a

8    national security case involving Hezbollah, international

9    terrorism, based out of here, in South Florida, and that

10   investigation was shutdown when the prosecutor found out that

11   he was, you know, creating these artificially low invoices.

12         So he lived up to his -- to the terms of his probation,

13   you know, in a substantial way, in terms of helping with the

14   Government and cooperating and giving the Government some

15   information in some -- into some seedy practices that he was

16   aware of, because the business that he's in attracts some of

17   these players, Your Honor.

18         And then lastly, Judge, Mr. Bryant, as a result,

19   really, of his taking that plea in Virginia, Your Honor,

20   Mr. Bryant had to give up his importer license.  So the dollar

21   amount of the loss of tax revenue to the Government is

22   partially on him, from our point of view, but it's also there's

23   other parties involved, in terms of the course of conduct that

24   led to the loss of tax revenue for the Government.

25         From the defense's point of view, it's not a 12 million

1    dollar loss attributable to Mr. Bryant or Havana alone, because

2    as of the year 2015, he would not be a, quote/unquote, licensed

3    importer.  So some other company, some other individual had a

4    license, imported the products.

5          And from our point of view, to bring the loss amount

6    down, Judge, in an effort to do that, we don't believe that

7    Mr. Bryant is wholly liable for any loss amount of tax revenues

8    to the Government.

9          And then I'm going to, I guess, a little bit preempt

10   Mr. Browne.  I had a conversation with him earlier where he

11   was -- informed me that the Government is seeking a healthy

12   penalty in this matter as well.

13         I know probation is recommending three years.  I

14   believe the Government's going to recommend four years, Judge.

15   And what's happening is that Mr. Bryant's going -- if the Court

16   follows the Government's recommendation for four years, which

17   would be approximately, you know, four or five times the

18   guidelines, is that Mr. Bryant's then going to stand before

19   Judge Altonaga scoring five or six years, roughly, and that

20   number could grow on us as well and, you know, it could be a

21   situation where he gets punished for 11 or 12 years for a crime

22   that he didn't benefit from.

23         So I stand before you and I seek a top-of-the-guideline

24   punishment for Mr. Bryant.  He admitted his wrongs.  He needs

25   to be punished, but I think the punishment needs to fit the

1    crime.  And if this was a situation where he made the money, I

2    wouldn't be standing before this Court asking for a

3    top-of-the-guideline punishment, Judge.

4         But the surrounding circumstances don't lend itself,

5    from our point of view, to a four, five-time enhancement,

6    Your Honor.  Thank you.

7         THE COURT:  Thank you.  All right.

8         Anything from the Government?

9         MR. BROWNE:  Yes, Your Honor.  I just want to address

10   some of the points Mr. Duffy made.  Even if this Court were to

11   accept Mr. Duffy's version of events, the fact is that the

12   defendant continued to evade, by fraudulent means, taxes due on

13   imported cigars during the time he was on probation, while he

14   was supposed to be under the Court's supervision, while he was,

15   frankly, given a break in Virginia and given a probationary

16   sentence; during that time the defendant was, instead,

17   continuing to break the law on an almost weekly basis.

18        It's true that taxes are calculated based on the

19   percentage of the domestic sales price.  And some cases, the

20   fraudulent documents that Mr. Bryant submitted in order to

21   calculate those taxes involved cents on the dollar.

22        But the reality, Judge, is that each shipment that this

23   defendant brought into this country was worth close to $100,000

24   and he was doing it several times a month.

25        This was a pattern and practice.  It was a consistent

1    type of behavior by this defendant.  And the very fact that he

2    was doing it, not only while he was under the Court's

3    supervision, but while he was supposed to be a Government

4    cooperator, should show the Court that this defendant

5    absolutely disregarded the probation and the conditions

6    thereof.  He has no respect whatsoever for the probationary

7    sentence that was imposed by the District Court in Virginia.

8         We're here to focus, obviously, on the conduct that

9    occurred after he was sentenced in May of 2015.  But as the

10   Court is aware, this pattern of fraudulent tax evasion began as

11   early as 2012.  From 2012 to 2016 this defendant evaded

12   approximately 13 million dollars in taxes.

13        Now, this suggestion that the defendant did not

14   personally profit from that, I just don't understand it,

15   because every cent that the defendant evaded in taxes

16   essentially stayed with the defendant.

17        The defendant should have paid 13 million dollars more

18   than what he did.  Just in the period following his sentence,

19   Judge, in Virginia, the defendant evaded more than two million

20   dollars in taxes, and that's just post-May of 2015.  That is a

21   substantial amount of money that the defendant owed to the U.S.

22   Government.

23        I would also note -- I don't know if the Court had the

24   opportunity to read the defendant's PSI in the 2015 case.  The

25   defendant is a sophisticated businessman who has been in this

1   business for quite sometime.  This was not an accident.  This

2   was not an accounting error.  This is someone with a law school

3   education who thought he could get one over on the authorities,

4   who cheated by producing fraudulent documents.

5        And finally, with respect to the audits that I believe

6   Mr. Duffy referred to, one of the terms of the defendant's

7   probation was that he cooperate with the authorities,

8   specifically, with the authorities responsible for taxing these

9   imports.

10       As part of that audit, the auditors asked Mr. Bryant

11  for documents.  What he provided to them was about 300

12  fraudulent documents that he, himself, altered by cutting and

13  pasting fraudulent numbers into the paperwork to fool the

14  investigators, to basically pull the wool over their eyes so

15  that he could continue his business, which was profitable.

16       Again, each shipment he brought in, he paid about

17  $100,000 and he made a considerable profit.  The defendant

18  actually altered the documents that he provided to Government

19  agents.

20       Your Honor, I think, based on those factors, the

21  Government is joining the probation office in recommending a

22  substantial upward variance in this case.

23       Again, the fact that one violation involves cigarettes

24  and the other involves cigars, I don't think really changes the

25  calculus, because we're still talking about tax evasion.  That

 1   money was owed to the Government and it wasn't paid.

 2          And it's the Government's position that each cent the

 3   defendant did not pay to the U.S. Government stayed with the

 4   defendant.  So, based on those factors, Your Honor, we are

 5   recommending a sentence of 48 months, four years.

 6          We considered recommending the statutory maximum in

 7   this case, but we do want to give some consideration to the

 8   fact that the defendant is admitting his conduct to the most

 9   serious of these offenses, that is, the offenses that he's been

10   charged with in the violation petition, but also the offenses

11   that he is essentially charged with in the pending indictment

12   that is currently before Judge Altonaga.

13          That demonstrates acceptance of responsibility and

14   recognition of the seriousness of this offense, but certainly a

15   guideline sentence is not sufficient in this case.

16          There is a number of egregious factors that I think the

17   Court really needs to consider in deciding what is a fair and

18   appropriate sentence for this defendant.

19          THE COURT:  What's the offense in front of

20   Judge Altonaga?

21          MR. BROWNE:  It is, in part, the evasion offense listed

22   in violation 2.  I believe there are 32 counts of failing --

23   excuse me -- of tax evasion on Federal Tobacco Excise Tax, that

24   is a violation of 26 U.S.C., Section 5762(a)(3).

25          And the defendant is also charged with a count of mail

1    fraud, which relates to the defendant, through his attorney,

2    mailing fraudulent documents to the authorities responsible for

3    taxing him.

4         THE COURT:  And when is that case going to trial?

5         MR. BROWNE:  Your Honor, the defendant was just

6    arraigned this morning.  As far as I know, it has yet to be set

7    for trial, however, I believe a status conference has been

8    scheduled for mid-November.

9         But at this time, based on the fact the defendant was

10   just arraigned today, it has not been set for trial yet,

11   Your Honor.

12        THE COURT:  Okay.  All right.  Well, Mr. Duffy, where

13   does your client's -- his children, where are they going to

14   private school or are they going to private school?

15        MR. DUFFY:  Yes, Your Honor.  I have Mr. Bryant's wife

16   here.  Judge, one student is up in college at Bowdoin, I

17   believe is in New Hampshire or Maine -- Maine, Your Honor, and

18   there's two children in high school in Riviera Country Day.

19   One in middle school, one in high school, Your Honor.

20        THE COURT:  Riviera Country Day, right down here, in

21   Miami?

22        MR. DUFFY:  Yes.

23        THE COURT:  Well, let me make a couple of observations,

24   comments, before imposing sentence and after consideration of

25   the defendant's background and criminal history and the nature

1    and circumstances of the instant offense and the need to

2    promote respect for law and to provide adequate deterrence, you

3    know, there are obvious similarities between this offense and

4    this violation or these violations and the underlying offense

5    that he previously was sentenced for.

6            And I have to say, probation is a sentence that is

7    rarely dispensed.  There's just -- the nature of the defendants

8    that come before us and their guideline range, you just don't

9    see probation being a judgment that is handed out very

10   frequently.  It wouldn't surprise me if less than five percent

11   of all defendants get a sentence of probation.

12           But it -- so, by that relative measure, he received a

13   very favorable sentence the first time around and, to my

14   knowledge, according to the pre-sentence investigation report,

15   he had only one prior run-in with the law, at age 31, when he

16   was charged with accessory and given 36 months of supervised

17   probation.

18           There were firearms involved in a robbery, and he

19   basically told the officers he was kidnaped at gunpoint by two

20   suspects who fled, however, the officers determined this was

21   not the case, due to discrepancies and information obtained

22   during the investigation.  The counts of burglary and assault

23   with a deadly weapon were dismissed, so he has had a prior

24   run-in with the law and that was some, what, 15 years or so

25   ago? -- or 25 years ago, I should say.

1    So, in any event, he got a significant break, I would

2    think, in this underlying offense in this case.  And one of the

3    concerns that we have as judges in sentencing somebody to

4    probation when they are a first-time offender is that they may

5    be left with -- not that it's not appropriate -- but you run

6    the risk that they may not appreciate the consequences of their

7    criminal behavior, because, other than getting a felony

8    conviction, there really is no other accountability for it.

9    There's no consequence, in terms of spending time

10   incarcerated, and they -- it may lull a defendant into

11   believing that it's okay to go out and commit other criminal

12   conduct, because look what happened to me, I got probation,

13   what's the worst that's going to happen.  It's a big criminal

14   justice system, it's a revolving door, maybe they will just do

15   that again to me.  And it doesn't really -- the sentencing

16   proceeding loses its efficacy, its punch, by not getting across

17   to the defendant that there really are consequences.

18   And then, you know, hopefully, most of the time, it

19   works out fine and somebody gets their bell rung and they stay

20   clear of any further criminal law violations, and sometimes

21   people don't do that and they do get lulled into a false sense

22   of thinking that there are no consequences to their criminal

23   behavior and they get picked up for something else.

24   And, of course, it makes the judge who put him on

25   probation feel like a mutt, you know, for here I went out on a

1   limb, I gave the guy probation.  What does he do?  He's on

2   probation.  Even while he's on probation, he doesn't even wait

3   until he's off of probation to start going back committing

4   crime.  He does it even right on probation, and he just kind of

5   makes people look foolish, because they thought they were doing

6   the right thing, they gave the guy a break, and what does he

7   do, what does he show for himself?  Before he's even off

8   probation, he's out committing another crime.

9          And in this case, it's exacerbated because not only did

10  he go out and commit another crime while on probation, he

11  committed a crime very similar to the crime that was the

12  underlying offense.  I mean, at least for goodness sake, go out

13  and do something else.  I mean, show that you have some, you

14  know, imagination or creativity.

15         No, I mean, he goes right back and he does, you know,

16  what he was doing before that he knew was wrong.  But I guess

17  that's -- he knows what he's good at and so he just kind of

18  thinks, okay, I can do the same thing; if I get caught, what's

19  going to happen, I get a little more probation.

20         So you can't do that.  He has to be held accountable

21  now and understand that his behavior really does have

22  consequences.

23         And in this particular case, the nature of the offense

24  is just not a one-off case.  I mean, it's not like he committed

25  a crime, got probation and somewhere along the line got caught

```
 1   again for doing one other offense.  No.  He was out there in a

 2   very sophisticated, orchestrated series of fraudulent

 3   transactions over an extended period of time.

 4        And it goes to show you that it was not by accident, it

 5   was premeditated and, you know, I understand he didn't get the

 6   lion's share, but you do something enough over time and you're

 7   skimming your little piece of the neighborhood and all of a

 8   sudden those pennies add up and the Government, the taxpayers,

 9   are out the money that they're entitled to.

10        So, they may be pennies, but lots of pennies can add up

11   to millions of dollars.  And even though he might not have been

12   the direct beneficiary of all of those, he played an integral

13   part in making that evasion take case -- take place.

14        I don't know what's going to happen with his new case

15   in front of Judge Altonaga, you know, I don't know what her

16   view of it will be after the sentence imposed here today, but

17   that's for her to determine, so...

18        The Court has carefully considered the statements of

19   all parties and the information contained in the violation

20   report.  The Court finds the defendant has violated the terms

21   and conditions of the supervised release and hereby revokes the

22   period of supervised release -- or I should say probation.  The

23   Court has determined that a sentence above the guideline range

24   is appropriate.

25        Pursuant to the Sentencing Reform Act of 1984, it is
```

1    the judgment of the Court that the defendant, Gitano Pierre

2    Bryant, Jr., is hereby committed to the custody of the United

3    States Bureau of Prisons to be in prison for a term of 36

4    months, consecutive to Southern District of Florida,

5    United States District Court, Case Number

6    1-16-criminal-20838-CMA-1.

7          Now that sentence has been imposed, does the defendant

8    or his counsel object to the Court's finding of fact or the

9    manner in which sentence was pronounced?  Any objection?

10         MR. DUFFY:  No objection, Your Honor.

11         THE COURT:  Mr. Bryant, do you understand you have a

12   right to appeal the sentence that I've imposed?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  That said, I don't know what's going to

15   happen with the cases in front of Judge Altonaga.  But I'm

16   familiar with the case, if either one or both of you want to

17   have her case transferred to me for purposes of handling it,

18   I'm more than happy to do it.  I'm not asking for it, but I'll

19   make myself available, assuming she wants to give it up,

20   whatever I can do to facilitate the handling of the case.

21         Okay.  Anything else?

22         MR. DUFFY:  Nothing from the defendant.

23         MR. BROWNE:  Just a point of clarification, Your Honor.

24   Did the Court order any supervision to follow its sentence?

25         THE COURT:  Excuse me.  The supervised release is -- we

1    said two to three years, so the supervised release to follow

2    the 36 months will be three years supervised release.  Okay.

3              Any objection?

4              MR. BROWNE:  Not from the Government, Your Honor.

5              MR. DUFFY:  No objection, Your Honor.

6              THE COURT:  All right.  Thank you.

7              (Proceedings concluded at 3:06 p.m.)

8

9

10                    C E R T I F I C A T E

11

              I hereby certify that the foregoing is an

12

     accurate transcription of the proceedings in the

13

     above-entitled matter.

14

     November 27th, 2016    /s/Glenda M. Powers

15   DATE                   GLENDA M. POWERS, RPR, CRR, FPR
                            Official Federal Court Reporter
16                          United States District Court
                            400 North Miami Avenue, 08S33
17                          Miami, Florida 33128

18

19

20

21

22

23

24

25